LAND, J.
Plaintiff, a young woman 21 years of age, sued the defendant for $10,000 damages for slander.
The petition charges that the defendant, in the presence of a large crowd of persons, asserted and circulated the report that plaintiff was “no good,” that she stays out all night with men, that if she went to court he would prove she was “crooked,” and that everybody knew what he meant by the word “crooked.”
The defendant, after filing a plea of res judicata, which was overruled, filed an answer, denying all the allegations of the petition charging slander, and, further answering, averred that, on the day referred to in the petition, plaintiff, abused the children of the defendant, and defendant’s family, that defendant remonstrated with the plaintiff, and she continued in her insults and abuse, and that plaintiff solely was at fault.
The case was tried before a jury, which by a vote of 10 to 2 found a verdict for the plaintiff in the sum of $1,500. Judgment was entered pursuant to the verdict, and the defendant has appealed.
Plaintiff, her sister, -and her mother resided in South Genois street. They made their living by peddling peanuts, sandwiches, etc., in the streets, and in the public parks of the city, and also in parks used for the purpose of sport and recreation. Their business sometimes required them to work at night.
The defendant, an Italian butcher, with his wife and several children, also resided in South Genois street, opposite the house of the Philip family.
On July 31, 1913, about 6 p. m., the neighborhood was aroused by a loud and angry quarrel in the street between the three Philip women and the defendant. According to a defense witness, all four were speaking at the same time, the defendant in broken English, and it was almost impossible to understand what was said.
This public disturbance grew out of an alleged attempt of Josephine, the 11 year old daughter of the defendant, to kick a puppy belonging to the plaintiff. The testimony as to what followed is too confused, conflicting, and dirty, to be recapitulated. That there was an exchange of insults and abuse between the parties is clear enough from the evidence. There is a great conflict in the evidence as to what was said by the defendant, but he virtually admitted that he told the plaintiff that she was “no good.” Several witnesses testified to remarks by the defendant, tending to show that he referred to plaintiff’s character for virtue. On the other hand, plaintiff’s version of the origin of the difficulty shows no reasonable cause for the violent altercation which immediately ensued. The little daughter of the defendant testified that the plaintiff called her a “dago,” and threatened her, and told her she *548 had “no pa,” meaning that the child was born out of wedlock.
It is reasonable to suppose that some insulting remark was addressed to the child, which aroused the anger of the father. The evidence convinces us that plaintiff was not free of fault in bringing on the quarrel, and that the defendant was influenced to use the language with which he is charged by the actions of the plaintiff in the premises. While plaintiff’s fault did not justify the slanderous charges, it certainly mitigated the offense. Townsend on Slander & Libel, § 414, p. 681. The slanderous words were not spoken with malice prepense, or with delib- , eration, but were the ebullitions of a sudden anger, for which the plaintiff was in a certain degree responsible.
Considering the circumstances of the defendant, we deem an award of $250 a sufficient vindication of the plaintiff, and a sufficient punishment of the defendant.
It is therefore ordered that the judgment below be amended by reducing the amount from $1,500 to $250, and that, as thus amended, ' the judgment be affirmed; plaintiff to pay costs of appeal.
SOMMERVILLE, J., takes no part.